Good morning. I'm Carrie Annette Harper on behalf of the plaintiff, Mr. Nunn, and I'm here on the appeal motion that the plaintiff brought because the district court reversed a plaintiff's verdict for a 1983 action based on alleged misconduct by myself and my co-counsel, Thomas Eback. Counsel, I'm concerned in this case that the district judge quoted the Second Circuit instead of the Ninth Circuit when he set out what the standard was, but in this case, I'm not sure whether it matters. The reason is you have what appears to be just willful, repeated violations of the plainest possible order to accomplish an improper objective, getting the jury to act on the basis of passion and prejudice rather than law and evidence. I don't know what else the judge is supposed to do. Your Honor, based on his statement, I'll direct. The first allegation was against myself that in opening arguments, I made the statement that, quote, the evidence will show that Deputy Myers used the N-word or currently uses the N-word and the N-word meaning N-I-G-G-E-R. And I spelled that out in the opening. There was an immediate objection, immediate clearing of the courtroom, and the court had restated what he believed that he thought we understood the motion in limine to be. It should be noted that the defense brought this motion in limine in the first place, and the court denied it, saying that the N-word could be used, but the judge wanted us to do something. There was a second order, was there not? There was no second written order. There was a clarification of a court's order on the record after opening statements. And what did the judge say? On the record after opening statements, he said there was discussion and he admonished me and said that he believed that that was not part of, that was not in conformity with his statement in the motion in limine, which was denied. It wasn't precluded. He just wanted me to discuss it beforehand. So I expressed to the court, I believed that we'd come to that, I believed that we were on the same page based on an informal brief chambers conference that was unreported. So the confusion... It was unreported? You're saying that what makes your conduct or your colleague's conduct okay is something that's not in the record? That is not what I'm saying. What I'm saying is that... The bench conference you said was unreported. Fifteen minutes after a chambers conference before I made opening arguments, we were in the judges chambers, defense and plaintiffs. We were in the judges chambers discussing many things that were some, most things not related to the case, things of that nature. There was a brief one or two line statement by defense counsel with regard to the motion in limine. That conference room in the judges chamber is not recorded. So my understanding of what we were saying eye to eye was, it was peerless versus peerless. We weren't floating on the same boat in that. Here's why I asked you about this. The judge says on page three of his order granting the new trial. He says the judge denied the motion in limine without prejudice, stating the motion is too broad an exclusion. Plaintiff made an offer to review with the court outside the jury's presence some evidence before presented it to the jury. Plaintiff is ordered to review with the court outside the jury's presence all evidence described in this motion before it is presented to the jury. On the morning before the trial, defense counsel explicitly, very explicitly reminded the court and plaintiff's counsel of the court's order expressing fear that the pretrial order would not be obeyed. In response, the court made very clear that reference to racial epithets could not be made without approval. Despite the court's order, plaintiff's counsel stated in her opening statement to the jury that the jury was going to hear Deputy Myers admits to using the N word. Now, are you telling us that there is an unreported event in between the next to last and last sentence that I read that makes the judge wrong? I'm telling you that the statement the judge stated, his recollection of the conference and chambers is incorrect. I'm not calling... Is there an affidavit or something under oath in the record that says that what the judge recollects is incorrect? I stated in my motion for reconsideration, I believe that was on 7-2... I asked if there was an affidavit, something under oath. I did make a declaration in that under oath, and I made a statement on the record saying that I did not believe I had violated it. It was 15 minutes later. There's no way I would come out... Counsel, I have somewhat of a different question on the same sort of general topic, but a slightly different take on it. It seems to me that the colloquy that you've been having with Judge Kleinfeld concerns whether the district judge properly thought that you personally or your co-counsel had violated a court order, but that might result in sanctions against you. But I guess what I'm troubled by is where is the connection between two comments in a six-day trial and undoing the entire trial? I guess I'm sympathetic to the idea that the district court might have sanctioned you personally, but it seems like rather than do that, the court essentially took it out on your client. And that troubles me, and I wonder if you would address that, and also opposing counsel. Oh, that troubles me tremendously, Your Honor, and thank you for allowing me to address that. It's very common that attorneys may overstep bounds or violate some rule of court and get sanctioned for various things from being late to anything. There's a way to, I don't want to quote the President, but there's a way to surgically cure the problem without using a machete for a two-week trial and just swipe away a Seventh Amendment right to listen. One second, counsel. I find it difficult to say that the mere sanctioning of counsel is going to be adequate to cure the potential prejudice to a party by dropping the NBOM not once but twice into a trial. Sir, if this was a bankruptcy case and if there was no evidence ever going to come out through the trial about the NBOM being dropped, maybe the argument that it was so prejudicial might be an issue. This was not bankruptcy. This was not a traffic collision. This was a civil rights 1983 allegation where two black men were alleging that two white cops harassed them while they were in their $100,000 bins in Orange County. Now, an all-white jury said they shouldn't have taken them out of the car on private property. Now, if this runaway jury, so impassioned by the fact that I honestly stated what was under oath from the deputy, I did not lie when I said he currently uses the N-word. I just didn't step to the side and say, Your Honor, I know I'm in opening, but I'm going to say to the jury, the deputy is going to admit to using the N-word. To this day, I still am not clear about what his order is, and in the second trial, I didn't even touch it. Counsel, this raises two questions for me. Your response does. One is, aren't we focusing unduly on that incident? The judge didn't grant a mistrial as soon as you violated his order in opening statement. He let it go on with an admonition. His order had been, you can bring out evidence that the police used these racist terms to refer to your clients during the incident. The only restriction is, before you show that the police used these racial epithets on other occasions, you have to bring it to my attention that you're about to so that I can decide whether there's a sufficient basis to allow it. The second thing is, and so it's a bit distorting to say that you thought it was allowed and it was just the opening statement. And the second thing is, I'm wondering whether this really is a case of punishing your client for the lawyer's wrongdoing. As I understand it, what's at issue on the new trial is $1,200 for the client and $200,000 in attorney's fees for you. Well, I'll address your first issue first, Your Honor. Your client basically got hammered. They got damages that approach being nominal, got them almost nothing. And what's really at issue is attorney's fees of more of, what, about 150 times what your client got. Well, sir, sometimes this happens, especially when you have a gladiator law firm going against a sole practitioner as myself. I was a sole practitioner myself. No one gave me any pity or breaks. I'm not. I know that all of you have done private practice, so I'll be brief when I say that this firm shut my office down repeatedly with frivolous ex parte. If they raise the attorney's fees to the limit to where they effectively shut me down with ex parte motions, failing to show for notice depositions, failing to do anything and never getting sanctioned, then they make those fees go up. Secondly, we can't always control our client. If our client will not show for the psychological evaluations to show psychological damages, I can't beat him up. He felt abuse. He felt he was getting religious therapy and therapy that can't be counseled. But I'd just like to know, wasn't there a second incident after this whole brouhaha, wasn't there a second incident that occurred? Okay. With regard to my co- Okay. And with regard to my co-counsel's alleged misconduct, Mr. Beck, who has considerable more experience than I in this matter, he was allegedly, there was alleged to have been misconduct by him merely posing a question to an expert. There was no assertion of what the evidence will show. It was a proposition of a question. And that's on page 271 of my Volume 2 in my excerpts, bottom paragraph, where there's discussion and then Mr. Harrell, to my right, objects because of the beginning of my colleague's question. And you reach that basis of evidence we've established. You were, well, since you've read the deposition, and again, the deposition was a little heated, which depositions are, since you've read the deposition, you must know that Myers conceded to being, and he's cut off. And then Mr. Harrell says, objection, motion and limine. Again, I guess Mr. Harrell is attempting to guess what Mr. Beck's saying. They've tried lots of cases together against each other. Then they go on. Then later on the following page, 272, line 13, question, what I'm concerned about, sir, did you receive some evidence that the word, that the N-word was in the vocabulary of one of the defendants? Now, being in the vocabulary currently is not a violation to an historical reference that the court had precluded. I wasn't going back five or ten years. He wasn't going back five or ten years and saying that, you know, you told a joke five years ago or a year ago. We're talking about present. Did you receive information presently that it was in his vocabulary? And if he would have been allowed to answer, the expert would have said no. Move on, next page, turn. That did not occur. That is not tantamount to violating a motion and limine that precludes historical references versus current. Why is that? I mean, really, that racial epithet's in everyone's vocabulary if they read Huckleberry Finn in high school. Well, I beg to differ. It used to be language that people used. Well, if someone had never read Huckleberry Finn, I suppose, or was not alive in the 1950s. I read Huckleberry Finn, and I was offended by Huckleberry Finn. I didn't like Huckleberry Finn, and I don't like the fact that someone says that the N-word is in everyone's vocabulary. A lot of people, the vocabulary is the words that you know. And most people know words that they don't use because they find them offensive. All of us, ma'am, let me finish my question. If you ask, is it in the vocabulary, literally, then many words that people don't use because they're offensive are in their vocabulary. The only implication I can see of the word that makes sense in the context in which the question was asked is to interpret the question as, is this a word this person regularly uses, which does exactly what the judge told you not to do without his approval. Well, Mr. Beck, again, I didn't ask this question. Mr. Beck examined him, and Mr. Beck read the motion in limine, and based on 30-some-odd years of practice, if Mr. Beck can be confused about it, and if the court reads the record, I know my time is winding down. Your time has exceeded, but you may finish the answer to this question. The court offers multiple versions of what the interpretation of the order should be, and he, again, had to explain it again, and if you continue reading through 272 forward, I ask again, no, can you explain again what your ruling is, because we don't get it. We're in a civil rights case arguing civil rights on a black man. That's like saying, okay, we can't talk about civil rights in a civil rights case. Thank you, counsel. You've exceeded your time, but I will give you some time for rebuttal. Okay. I just wanted to address the Downard issue, because that only dealt with Myers, and Downard got a new trial, too, and he just kind of rolled along for the ride. I understand that. Thank you, Your Honor. Thank you. Good morning, Your Honors. Michelle Harrell for the respondents in this case. I'm very concerned about two things that are related to each other. The first is that the district court did not apply the Ninth Circuit standard for granting a new trial for attorney misconduct. In the Ninth Circuit, it requires that the misconduct permeated the entire proceeding and that the jury was influenced by passion and prejudice in reaching its verdict. Instead, the judge applied a Second Circuit case that seems to require only some prejudice to the opposing party, and so looking at that standard and looking at the observation that Judge Kleinfeld made earlier in a question, this jury awarded a tiny amount. I just don't understand how two or three incidents permeate a whole proceeding, but more importantly, where's the passion and prejudice when the jury finds that there's nothing malicious in what the defendants did and they award almost nothing? Your Honor, this is why I believe the law is appropriately structured. It's not a de novo standard. It's not incumbent on this court to try to guess. The trial court saw it. Well, the trial court applied the wrong legal standard. That's per se an abuse of discretion, is it not? Your Honor, I don't know that the standard articulated by the court would have mattered. It wouldn't have mattered given this record. First of all, I'm thinking the United States Supreme Court in Coon has said that when a court applies the wrong law, that counts as an abuse of discretion. That's one way a court can abuse its discretion, by just picking the wrong law. So what do we do with that? We either have to say the district court gets another chance to do it right, or we have to say on this record we can't see how applying that, any judge could come to a different conclusion. Your Honor, I believe that a fair reading of this record shows that there was permeation of the entire trial, not just with the N word, but on another important point that nobody's brought up here yet. That third point, the insurance, which is vague. If I had been a juror, I'm not sure I would have even understood what the heck was going on with this half a sentence. Your Honor, and then there's another point that hasn't been brought up here. The point with regard to the former sheriff of Orange County,  this trial court was a trial court judge on that matter. He lives in Orange County. He knows Orange County. Counsel, that struck me as kind of trivial, frankly, that particular one. Here's what bothered me in the case. It's the flip side of a question I asked your opponent. It looks to me as though this new trial really isn't about the nominal plaintiffs, the people who are supposed to be the plaintiffs at all. It's about the lawyers' fees because the plaintiffs got hammered. They did terribly. They got damages of, what was it, $1,200 or something like that. $2,100. $2,100. In the pre-trial phase, they were asking for $1 million. They were asking for a million and they got $2,100. They got hammered. And one thing that does is it means that this really isn't about punishing the clients for the lawyers' sins, but the other thing it does is suggest to me that the misconduct did not so permeate the entire proceedings as to cause the jury to be influenced by passion and prejudice in reaching its verdict because $2,100 is not very passionate. Your Honor, this verdict means a tremendous amount to my two officer clients. But the jury doesn't know. They're not supposed to know whether insurance is paying it and they're not supposed to know whether it will be a career problem for the police. What they're supposed to decide is was there wrong and, if so, what are the damages. What the judge was supposed to decide on the new trial is whether the lawyers' misconduct so permeated the entire proceeding as to convince the court that the jury was inflamed by passion and prejudice. Your Honor, again, I... And why doesn't the $2,100 tend to show that the jury was not influenced by passion and prejudice? Your Honor, I believe what that verdict, and we're speculating, but I believe what the verdict showed is that the jurors didn't believe these officers did one darn thing wrong. Well, then they wouldn't have awarded $2,100. But they weren't much impressed with me, the trial lawyer, standing up repeatedly trying to keep them from hearing about historical use of the N-word, which I was put in that spot, and it's the whole... You were put in that spot twice in a six-day trial. I guess the other aspect of this that I find difficult to understand, because all of that colloquy had only to do with Deputy Myers. None of it had to do with Deputy Downard. And yet the new trial was as to both, and there's no real explanation that I can fathom in what the district court says. You know, maybe the right answer is that the court was intent on punishing counsel and not giving fees rather than on punishing the clients, but it does not seem that applying the Ninth Circuit standard that both Judge Kleinfeld and I have talked about, I just don't see how what the judge has said begins to fit into our required standard. Your Honor, I may suggest this. I believe that the permitting the trial needs to be read in the context of what was done. If it's more serious, one event I will submit to the court. If it's sufficiently serious... Well, given that Judge Graber has asked you, I'm just visiting, but it does strike me a little that questions are asked here, and it's like a political campaign. Answers don't come. Lawyers answer whatever they wish to answer. The question to you is, I think, about the improper application of a standard when a different standard should have been applied on the determination at issue. Your Honor... Okay, now on that point, I thought that the issue had been waived by plaintiffs because it had not been raised in their briefs, and that that was the simple answer, but now I'm having second thoughts because it does appear that it approaches plain error and that you seem to be conceding the point that the wrong error was used. Now, am I misunderstanding what you're saying, and may I have an answer to that question? Your Honor, I believe that the reason why it's not crystallized in front of the court is because it wasn't raised in Plaintiff's brief, and therefore we haven't briefed it because it hasn't been raised, and I think it's a cardinal rule of appellate practice affirmed by this Court and by Your Honors that if it's not raised in the opening brief, it's waived. Well, that's true, but it's complicated here by the fact that the very motion that is being determined by the trial court is being determined based on an error of law. And if it's an error of law, it's a little brusque for us to brush it off as to say, well, it was inartfully raised in the briefs or not raised at all as an excuse to justify the error, the clear error. With respect, this is where I think that my clients are handicapped. If it had been raised, then it would have been incumbent on us, and I believe we could have done that. But on the other hand, before we go to the cheering squad here, I don't think that you brought that to our attention either, that it wasn't raised in the opening briefs, did you? Your Honor, it is not my practice to point out things that haven't been raised when they're just not there. There was nothing said about it at all. If something had been said, then the way it would have worked is we could have then briefed it up with cites to the record that showed why the judge did the right thing. It's not a matter of the record. That's the problem with the answer that you're giving. The issue is that the district court quoted and used a standard from the Second Circuit. It's right there. He quotes it. He cites a Second Circuit case. There's controlling Ninth Circuit law that governs that exact question, and it's different. So it's nothing. That mistake isn't a matter of looking at facts. It governs how you look at the facts, and I guess that's my problem. Thank you, Your Honor. And there are Judge Graber and Judge Kleinfeld. I could find, and perhaps I may be enlightened by all of you, I could find nothing in the record upon which the trial court made factual findings on the very issue required by the Ninth Circuit standard. Your Honor, again, if this had been appropriately raised by plaintiff's counsel, I would be standing here now being able to point the court to my brief record cites that would show why the error, if there was one, was harmless, and why even under this standard the record would satisfy the standard that's being quoted by the court. You have the problem we all often have. When the other lawyer overlooks something that would be to their advantage, you have to decide whether to lie in the weeds or bring it up and risk educating your opponent. And then you would have to remind us that just because an argument is made in the reply brief doesn't mean that it's raised for purposes of decision. And it was a tactical decision you made. And we have to decide now whether we can or should reverse on the basis of an error of law that was not claimed in the opening brief. Is there any more to it than that? I think there is something more to it than that. What we have heard repeatedly from the other side is they didn't understand the trial court's orders. The trial court has bent over backwards. That isn't our brief. Okay, you're now addressing a different concern, which is the nature of the wrongdoing. Let me ask you something else before our time runs out that occurred to me. As a practical matter, you won the case because you blew the million-dollar demand and the attempt to inflame passion out of the ballpark. You just knocked it right out of the ballpark and wound up with this $2,100 nominal verdict. That's an incredibly good result. However, it seems quite plain that plaintiff's counsel attempted to stir up the jury to act on the basis of passion and prejudice by violating the judge's clear, repeated orders. Both of those look pretty solid to me on this record. What I'm wondering is, under Ninth Circuit law, can the judge take it out on plaintiff's counsel on the attorney's fees award? Should we remand and tell him, no, you didn't have a good enough basis for ordering a new trial, setting aside the verdict, just consider counsel's malfeasance in counsel's attorney's fees award? Is that permissible under the law? Your Honor, we asked the trial court to throw the case out based on repeated, consistent, unexplained violations of the law. I know you did. Counsel, you're not answering the first five questions. Everybody here gives speeches. I don't understand it. We already read the speeches in the briefs. I'm sorry. I won't ask it again. You had your chance to answer it. Goodbye. The question is whether in setting a fee for a successful plaintiff's counsel, the court is permitted to take into account in setting the fee or in offsetting it by some financial sanction any misconduct that may have occurred during the trial. True. That is one of the factors that can go into the court's assessment of what went on here. Well, did the court do so, and is there a record we can review on that point? Did the court say, I'm granting a new trial as a sanction against counsel? Your Honor, I believe that that is the fair reading of what the court did because our motion was styled a motion for sanctions, and then we listed a variety of things that we asked the trial court to do. One of them was to grant a new trial. Another one was to throw the case out. Another one was to order the attorney's fees that were expended by my firm and my clients on the first trial. Let me just very quickly. At the time of these two incidents with the sufferance of my colleagues, did you move for a mistrial on the occasion of the first incident? No, I did not. Second incident, did you move for a mistrial? I did not. Did you ask the court for curative instructions? Your Honor, I did with regard to the opening statement. And was a curative instruction given? Your Honor, with regard to what was said, with regard to the N-word, it's so poisonous. There are certain things that can't be cured. No, but right at that point, did the court, we'll review the record, but did the court at the point at which the incident occurred give a curative instruction of some type? Your Honor, the court. The court that you instructed that these arguments are not evidence and you're not to regard that statement? Your Honor, with regard to the opening statement, the trial court said something to the effect of the opening statements are just statements by the lawyers. They're not evidence. The trial court, as it said in its new trial order, it wasn't moved by the first incident and the opening statement standing alone. But then there was a second. Well, the second actually, to me from the bench, sounded less, more ambiguous about whether it in fact was a violation of the court's order. Your Honor, but the trial court said this is such a uniquely sensitive subject. Any time this subject is brought up, bring it to my attention in sidebar. There was nothing stopping them from doing that. That's all they needed to do. But it was up there unexplained as to where they were going, what they were planning on saying next, and given the history of this case and the statements by the other side that they don't understand the order. Counsel, you've exceeded your time. We do understand your position. Your Honor, thank you. Ed, you may have a minute for rebuttal. Thank you, Your Honor, and I'll go really briefly. In answer to your question that you asked, Mr. Harrell, was there sanctions available to the court to punish myself and Mr. Beck? Yes. I brought them up in my motion for reconsideration, and that's in the excerpts of record, volume 3, pages 355 through on. I did suggest not punishing the client because notwithstanding the fact that it was only $2,100, he did pay a considerable amount in depositions. So there were thousands of dollars of deposition costs that he could have recaptured. There was an expert witness flown from Phoenix, so he could have recaptured some of those funds. So it wasn't just only $2,100. He stood to recoup maybe $25,000 to $30,000. Second, with regard to the new trial, when Mr. Harrell was asked specifically by the district court, well, can't I just punish the attorneys? Do you want a new trial, or do you want me to act on sanctions motions that you brought? The defense brought a monetary sanctions action against myself and Mr. Beck. And on page 133 of my excerpts, volume 2, lines 19 through 24, Mr. Harrell says, no, we want a new trial. So, yes, they could have reduced the amount of attorney's fees and punished us monetarily and not punish the client and overturned, you know, and just reversed the verdict. Last, this is a case where the NBOM was coming no matter what. Whitcomb was going to accuse Myers of dropping the NBOM. It's not like the N word was going, the case was going to go without having that word used. Now, Mr. Harrell. Was it otherwise used during the trial properly? Yes. Yes, it was used when the witnesses were asked, what did you hear on the telephone call? I heard an unidentified officer say, shut up, N-E-I-G-G-E-R. I spell that word because it's not in my vocabulary. Then the district court based its fees on, based the ruling on the misconduct of, the alleged misconduct of the attorneys and didn't explain what, we didn't have anything more to, the ruling was so vague. Counsel, we understand your position and you have also exceeded your time. Thank you, Your Honor. We thank both counsel. The case is submitted. And our final case on this morning's docket is Kennedy v. Adams. I believe we've changed our course slightly and the court will take about a 10 minute break before hearing the last case. Thank you for your indulgence.
judges: Kleinfeld, Lucero, Graber